REID, Judge.
Louis Danos Jr., individually and as administrator of the estate of the minor, Kurt Danos, his son, brought this suit against The Central National Insurance Company of Omaha, insurer of a 1959 Chevrolet automobile operated by Mrs. Wester Charpentier and owned by Mrs. Charpentier and her husband, for damages as a result of the Charpentier vehicle running into plaintiff’s son, Kurt Danos, and *107 injuring him, on or about October 24, 1962 at Cut Off, Louisiana.
The accident happened on Danos-Vegas Lane in Cut Off. This lane runs perpendicular to and intersects Louisiana Highway 1 and Bayou Lafourche. It is a blacktop roadway with houses on both sides and is approximately 10 or 11 feet in width.
On the day in question plaintiff Louis Danos Jr. had brought his children, including Kurt Danos, to visit their grandparents who lived on Danos-Vegas Lane. About 1:30 that afternoon Mrs. Charpentier backed her car out into Danos-Vegas Lane, where she also lived, and proceeded toward the Highway that the Lane runs into intending to visit her physician. When she got close to the Senior Danos’ residence Kurt Danos ran out in front of her car. She applied her brakes but was unable to avoid striking him. The speed limit on Danos-Vegas Lane was IS miles an hour and Mrs. Charpentier testified, without contradiction, that she was traveling at 5 or 10 miles an hour. She was only one or two houses from the scene of the accident when she started traveling on the Lane on her trip to see the doctor.
Defendant filed an answer denying any liability and denying that Mrs. Charpentier was negligent in any manner and then filed a third party petition against Louis Danos Jr., alleging that the accident happened through his negligence in letting the boy play near the Lane without adult supervision. Plaintiff filed a peremptory exception to this third party petition and the Court sustained it.
The matter was then tried on the merits and by agreement of the parties, although no agreement appears in the record the trial was restricted solely to the issue of liability and to so much of the issue of quantum that could be proved without the offer of medical evidence. The matter was decided by the District Judge on October 11, 1967 with written reasons, rejecting plaintiff’s demand and dismissing the suit at his costs. Plaintiff has appealed from this judgment, seeking a reversal on the question of liability, or, alternatively that the case be remanded for a new trial.
There were two witnesses to the accident, Mrs. Wester Charpentier and her sister-in-law, Mrs. Joseph Charpentier. Mrs. Wester Charpentier was the driver of the car that struck the Danos child and Mrs. Joseph Charpentier was standing a short distance from the scene of the accident when the car struck the child. Mrs. Joseph Charpentier was a sister to plaintiff, Louis Danos Jr., an aunt of the child who was injured. At the time Kurt Danos was about four years of age.
Mrs. Wester Charpentier’s testimony is that she backed out of her driveway which was a short distance from the Danos Senior residence and started toward the Highway to go to a doctor. She testified positively that she was not traveling more than five or ten miles an hour. She testified that she saw no children playing, although she knew that there were children living on the street. Louis Danos Jr. had parked his car in his father’s driveway at an angle and the rear end of it was toward the Lane and about two feet from the Lane. This blocked the view of the children who were playing on the side of the car. When she got close to the Danos automobile Colly Charpentier, a little older than Kurt Danos, and the son of Mrs. Joseph Char-pentier, ran out into the Lane followed by Kurt Danos. Mrs. Wester Charpentier did not see Colly Charpentier come out into the Lane, and when she saw Kurt Danos she was very close to him. She said that he came running out into the Lane, stopped and looked straight at her in the eye. Her immediate reaction was to apply her brakes, which she did. She testified that she did not have time to turn to the left to try to avoid the accident, or to sound her horn, and all she thought of was applying her brakes. She applied her brakes and struck the boy causing him considerable injuries. Her car stopped almost instantly after she struck him, and she stayed in her car, which by that time was in the rear of *108 the Danos car parked in the driveway. Danos came out, picked up his child and about that time Mrs. Joseph Charpentier arrived and she and her brother took the Danos child to the hospital. Mrs. Wester Charpentier had to back her car up in order to permit the Danos car to be backed out of the driveway and proceed to the hospital.
Mrs. Joseph Charpentier also lived on Danos-Vegas Lane and she testified that she was by the corner of her garage when Mrs. Charpentier passed her driving at a slow rate of speed, and she saw her child, Colly, go out into the street. She was afraid Mrs. Charpentier’s car would hit Colly and she started running toward the car. She saw Mrs. Charpentier’s brake lights go on and the impact occurred when the little Danos boy was even with the side of the parked vehicle. Plaintiff, himself, testified that he was inside his mother’s home and he turned his head and looked back and saw Kurt flying to the ground and saw the front of the car stopping at that point.
Plaintiff assigns two errors as his reason for seeking a reversal herein, to-wit:
“1. The judgment is contrary to the weight of the evidence and the applicable law.
2. The Trial Court erred in refusing to admit evidence to show that the defendant’s insured knew children customarily played in the area and should have known there may have been small children playing in the area at the time of the casualty.”
The Trial Judge with written reasons for judgment found as follows, to-wit:
“In any event the Court is of the opinion that the defendant’s assured’s vehicle was only a short distance away when the small boy ran out into the path of the oncoming car. Both witnesses testified that the driver immediately applied her brakes attempting to stop. This suggests to the Court that the driver was maintaining the necessary and proper lookout. The record further shows that the driver was driving at a slow rate of speed between five and ten miles an hour.
The Court finds that there has been a failure of plaintiff to show that there was any improper driving or negligence on behalf of the defendant’s assured.”
Plaintiff herein argues that under the jurisprudence of this State a driver is held to a high degree of care when he knows or should know that small children are in the immediate vicinity. There is no question but that this is the law. However, in the instant case the Trial Judge, and we concur with him, found that the facts were such that the defendant driver was not put on notice that there were small children playing. The parked car blocked any vision of any children and Mrs. Char-pentier testified that she saw none until she first observed the Danos child running toward her car into the Lane. She then applied her brakes. She was corroborated in this by Mrs. Joseph Charpentier who testified that she could not see the brake lights come on until after her boy, Colly, had noticed Mrs. Charpentier approaching and ran back off the Lane.
We believe that this Court in Campo v. Vampran, 183 So.2d 57 (La.App.1960), well stated the law applicable to the instant case.
Campo v. Vampran, supra, held as follows:
“The duty to exercise greater than ordinary care to avoid injury to a child does not become operative or exist in favor of such child until his presence is known or should have been known under the existing facts of the particular case to the operator or driver of a motor vehicle. The motorist, upon discovering the presence of children in his path of travel or in a position where they could become imperiled, is under a duty to exercise the highest degree of care to avoid injury to them. Each case must *109 be adjudged on the facts peculiar to it. No one case is absolutely controlling of another as few cases are identical factually. See: Lyles v. Aetna Casualty & Surety Co. et al. (1961) La.App., 136 So.2d 542; Seale v. Checker Cab Company (1962) La.App., 137 So.2d 478; Smith v. Toye Brothers Yellow Cab Co. (1962) La.App., 142 So.2d 59; and Schuster v. Audubon Insurance Co. (1962) La.App., 147 So.2d 226.”
This Court further held in Campo v. Vampran, supra, as follows :
“* * * In all of the cited cases, the driver of the offending vehicle was aware of the presence of and saw or should have seen the injured child and was correctly charged with the responsibility of taking precautionary steps to avoid injury and harm to the child. Not so in the instant case; Mr. Vampran did not know of the presence of the Campo child as his view was obscured by the parked car from in front of which the little tot ran. The fact that Mr. Vam-pran had seen other children playing in other yards and other lawns before reaching the locus of the accident could not serve as warning to him that a child would suddenly dash into the street from in front of a parked car at the curb.”
The case of Schuster v. Audubon Insurance Company, La.App., 147 So.2d 226, is a case well in point with the facts of the instant case. This case held as follows:
“The special duty owed by motorists to children, the aged, the infirm, and drunken pedestrians, is well-established in our jurisprudence. Motorists driving in close proximity to points at which children walk, play, or congregate, or who see any of them in possible danger, must exercise greater care than would be necessary in the case of grown-ups or normal persons. Gray v. Great American Indemnity Company, La.App., 121 So.2d 381.
A motorist is not the insurer of the safety of children playing near the street and, if a motorist is proceeding at lawful and reasonable speed, and obeying the rules of the road, he will not be held liable for injury to a child who suddenly darts into the part of his automobile from a concealed position in such a manner that the motorist is unable to avoid striking the child. Layfield v. Bourgeois, La.App., 142 So.2d 799, and cases therein cited.
Motorists travelling at lawful speeds and observing the rules of the road are not required to peer behind parked cars to discover that someone might emerge therefrom.”
See also McMorris for Use of McMorris v. Graham, La.App., 176 So. 630.
We feel that Mrs. Charpentier was traveling at a lawful and reasonable rate of speed and obeying all the rules of the road and had the proper lookout. She was guilty of no negligence and cannot be held liable where a child suddenly darts or runs into her path from a concealed position in such a manner that the motorist is unable to avoid striking the child.
For these reasons we feel that the judgment of the Trial Court is correct and should be affirmed.
We note that this case was tried piecemeal in that only the issue of liability was heard by the District Court and passed upon accordingly.
The law reprobates piece-meal trial of cases and we do not mean this case to be a precedent for similar actions in the future.
The case of St. Louis National Bank v. Bloch, 44 La.Ann. 893, 11 So. 466, held as follows:
“When plaintiff’s petition is put at issue by defendant’s answer in which is contained a reconventional demand, the suit with its issues, stands as an entirety and cannot be tried piece-meal.”
We are proceeding with the disposition of this case because the evidence was so *110 strong there was no negligence on the part of the driver and that the finding by the District Judge was correct.
For the above and foregoing reasons the judgment of the Lower Court is hereby affirmed at appellant’s costs.
Affirmed.